Lincoln Coal Mining Co. v. McNally.

## LINCOLN COAL MINING CO.

### v.

### BRYANT McNALLY ET AL., ETC.

1. DECLARATIONS OF AGENT.—The declarations of an agent of a company, whether incorporated or not, are only admissible in evidence against the company when they form part of the *res gestæ* of some business transacted by him for his principal within the scope of his authority.

2. DECLARATIONS.—Where it was claimed that the evidence failed to show that appellant was incorporated, as it appeared that the two parties whose declarations were received, were interested in the company as stockholders, that their evidence was against their interest, and therefore properly admitted. *Held*, that if admitted on that ground, the declarations should have been received only as evidence against the parties making them, and not permitted to affect the rights of the other parties in interest.

3. DAMNUM ABSQUE INJURIA.—Where the death of a party is the result of a purely accidental occurrence, without the fault of those causing it, no action will lie, for though there is damage, the thing amiss, the *injuria*, is wanting.

4. MASTER AND SERVANT.—Where a party voluntarily enters service and continues therein, with full knowledge of its dangerous character, he assumes all the risks incident to the service in which he is engaged.

5. FELLOW SERVANTS.—Where the parties causing the death of deceased were in the service of a common master, both actually co-operating at the time of the injury in the same thing—putting a pipe in a shaft, the deceased in the shaft, the others at the top, all in the presence and hearing of each other, their relations being such that they could have exercised an influence, one upon the other, promotive of proper caution in respect of their mutual safety, they were fellow servants within the rule which exempts the master for liability for an injury inflicted upon one by the carelessness of the other.

6. SAME.—Where at the time of the accident D. and deceased, with other employes, were performing the labor of common servants, neither exercising any authority over the other, but being co-servants as to the labor then being performed, the mere fact that D. may have had the power to employ and discharge other servants and to superintend them when at work, would not change his character from that of a co-servant to that of a representative of the company.

APPEAL from the Circuit Court of Logan county; the Hon. G. W. HERDMAN, Judge, presiding. Opinion filed July 3, 1884.

Messrs. BEACH & HODNETT and Mr. E. E. M. COCHRAN, for appellant; that for injury to the deceased through the negligence of the foreman, the company is not responsible, because they were fellow servants in the same line of employment, cited Honner v. I. C. R. R. Co., 15 Ill. 550; I. C. R. R. Co. v. Cox, 21 Ill. 20; Moss v. Johnson, 22 Ill. 633; C. & A. R. R. Co. v. Keefe, 47 Ill. 108; C. & A. R. R. Co. v. Murphy, 53 Ill. 336; C. C. & I. C. R. W. Co. v. Troesch, 68 Ill. 545; St. Louis & S. E. Ry. Co. v. Britz, 72 Ill. 257; I. C. R. R. Co. v. Keen, 72 Ill. 512; T. W. & W. R. R. Co. v.

Lincoln Coal Mining Co. v. McNally.

Durkin, etc., 76 Ill. 395; C. & A. R. R. Co. v. Rush, 84 Ill. 571; C. & N. W. Ry. Co. v. Moranda, 93 Ill. 302; C. & T. R. R. Co. et al. v. Simmons, 11 Bradwell, 147; C. & N. W. Ry. Co. v. Scheuring, 4 Bradwell, 533.

Declarations or admissions of the officers of a corporation of and concerning a past transaction are placed upon the same grounds as the declarations or admissions of an agent that are not a part of the *res gestæ* and are not competent: 1 Phillipps on Evidence, p. 402, n. 134; 1 Greenleaf on Evidence, 113, 114; Abbott, Trial Evidence, 44; Cov. Mut. Ben. Asso. v. Conway, 10 Bradwell, 348; G. & M. R. R. Co. v. Burns, 92 Ill. 302; County of La Salle v. Simmons, 5 Gilman, 513; School Directors v. Wallace, 9 Bradwell, 312; Thomas v. Rutledge, 67 Ill. 213; Jenks v. Burr, 56 Ill. 450; Mix v. Osby, 62 Ill. 193; Linblom v. Ramsey, 75 Ill. 246; Waggonseller v. Rexford, 2 Bradwell, 455; Angell & Ames on Corporations, 324.

Messrs. BLINN & HOBLIT and Messrs. FORREST & HUMPHREY, for appellees; as to admission of agent's declarations, to prove *knowledge* of the existence of the fact, cited Abbott's Trial Evidence, p. 45, § 53; Chapman v. Erie Ry. Co., 55 N. Y. 582; Lanning v. N. Y. C. R. R. Co., 49 N. Y. 538; Wilson v. McCullough, 23 Pa. 440; Commercial Bk. v. Woods, 7 W. & S. 89.

As to duty of master to furnish safe appliances: Tarrant v. Webb, 18 C. B. 797; Gilman v. Eastern R. R. Co., 10 Allen (Mass.), 238; Cayzer v. Taylor, 10 Gray (Mass.), 274; Keegan v. R. R. Co., 8 N. Y. 175.

When the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon one by the master over his co-laborer, the master will be liable. In such case, he is not the fellow servant of those under his charge with respect to the exercise of such power: C. & A. R. R. Co. v. May, 108 Ill.; C. B. & Q. R. R. Co. v. Dougherty, Chicago Legal News, April 5, 1884, p. 240; Lanning v. R. R. Co., 49 N. Y. 521; Flick v. R. R. Co., 53 N. Y. 549.

HIGBEE, P. J.   This suit was brought by appellees as ad-
ministrators of Samuel Gambrel, deceased, against appellant,
a coal mining company, to recover damages for wrongfully
and negligently causing the death of deceased.   The trial of
the cause in the court below resulted in a verdict and judg-
ment for appellees, and the company brings the case here for
review.

The first reason urged for a reversal is that the trial court
erred in admitting certain evidence in behalf of appellees
against the objections of appellant.   The suit was against the
company as a corporation created under the laws of this State;
and for the purpose of proving that deceased was wrongfully
and negligently killed by the servants of the company while
engaged in the service, as alleged in the declaration, appellees
were permitted, against the objections of appellant, to read in
evidence to the jury an affidavit of Frank Frorer, the super-
intendent of the company at the time deceased was killed,
made before the coroner at the inquest held by him over the
remains of deceased; and also to prove the verbal declarations
of said Frorer and one Harts, one of the directors of the com-
pany, giving their account of what transpired at and before
the time of the accident.

The declarations of an agent of a company, whether incor-
porated or not, are only admissible in evidence against the
company when they form a part of the *res gestæ* of some
business transacted by him for his principal within the scope
of his authority.

1 Phillipps on Evidence, page 402, note 134; 1st Green-
leaf's Evidence, paragraphs 113, 114; Abbott's Trial Evi-
dence, page 44, paragraph 51; The Covenant Mutual Benefit
Association of Illinois v. Catherine Conway, 10 Bradwell,
348; The Grayville & Mattoon R. R. Co. v. Burns, 92 Ill. 302;
County of La Salle v. William Simmons, 5 Gilman, 513;
School Directors, etc., v. Wallace, 9 Bradwell, 312; Thomas
v. Rutledge, 67 Ill. 213; Jenks v. Burr, 56 Ill. 450; Mix v.
Osby, 62 Ill. 193; Linblom v. Ramsey, 75 Ill 246; Waggon-
seller v. Rexford, 2 Bradwell, 455; Angell & Ames on Corpo-
rations, paragraph 309, page 324.

Lincoln Coal Mining Co. v. McNally.

Both the verbal and written declarations received in evidence were made after the happening of the accident to which they referred and not in the course of any business then being transacted by the parties making them for the company.    The persons making them were both competent witnesses, and instead of proving their declarations made out of court, in reference to the disputed facts of the case, they should have been produced as witnesses in open court and there examined on oath, subject to cross-examination.

But it is insisted by appellees' counsel that the evidence failed to show that appellant was incorporated, and as it appeared that both Frorer and Harts were interested in the company as stockholders their evidence was against their interest and therefore properly admitted.  If admitted upon that ground the declarations should have been received only as evidence against the parties making them and not permitted to affect the rights of the other parties in interest.   Again, appellees having declared against the company as a corporation, they were estopped from denying that fact on the trial.   These witnesses were subsequently called and testified as witnesses in behalf of appellant and it is claimed by appellees that their evidence was in conflict with the declarations received in evidence and that the same was proper as impeaching evidence. No foundation had been laid for admitting it as impeaching evidence, nor was it offered or received for any such purpose, but as evidence in chief for which purpose it was improperly admitted by the court.   But it is said by appellees that the affidavit and declarations admitted in evidence did not tend to prejudice the rights of appellant, and therefore the judgment should not be reversed for that reason.   What effect this evidence had in producing a verdict which we think was not warranted by any evidence in the record we can not certainly know, but we are not prepared to say that appellant was not seriously prejudiced by it.

It is next contended by appellant that the court erred in overruling a motion for a new trial, for the reason, as alleged, that the evidence did not show that the death of appellees' intestate was caused by the negligence of appellant's servants.

At the time deceased received the injury which caused his death, he and one William Moore were working on a scaffold in an escapement shaft, putting up a water pipe. The shaft was 275 feet deep, and the scaffold on which these parties were working had been built up from the bottom about 100 feet, leaving them still below the surface 175 feet. The pipe was in joints or sections of sixteen feet, and had to be fastened together as it was put up, and then secured in its place by staples driven into the wood work; cleats were nailed to the timbers in the shaft, and oak boards six to eight feet long, ten to twelve inches wide and two inches thick, were laid thereon. This formed the scaffold upon which the men stood while putting up the pipe. Timothy Downey, the shift boss, and William McFaden, a laborer, were letting the boards down, as they were needed, with a rope or hand line fastened around each one sent down by a loop or slip knot about three feet above the lower end and two half-hitches above the loop, the last one coming up within a foot of the top. While one of the boards was being lowered in this way it slipped out of the rope and fell upon deceased, inflicting the injury which caused his death. The accident was not the result of any defect in the line or rope used, nor of any want of skill on the part of those handling it. Downey, who had hold of it at the time, was a skillful and careful miner, thoroughly versed in his business, and accustomed to letting scaffolding boards down as this was done. The overwhelming weight of evidence, from a great number of experienced miners, very clearly shows that the manner in which the board was fastened, with a loop or slip knot and two half-hitches, was in general use among miners, and was regarded as perfectly safe, and no accident was known ever to have happened from its use. No one knew this fact better than deceased. He had had considerable experience in mining, had frequently been employed as shift boss, and had been accustomed to letting down scaffolding boards with the hand line fastened as this was. When working below and untying some of the boards sent down by Downey, he remarked that there was no use in putting more than one half-hitch on them, it was so much bother to untie

them; that they had tied them as if they expected them to stay tied always. For two days prior to the accident Downey had worked on the scaffold below with deceased, and went to the top to take the place of the person handling the line at the request of deceased, who had the greatest confidence in his skill and caution, and at the time expressed the belief that it would be safer to have Downey let the boards down. No witness seems to be able to give any satisfactory reason for the board slipping from the line; they do not attribute the accident to any defect in the line used, the manner of fastening it, or to the want of care or skill on the part of those holding it; and, so far as we can see, the verdict of the jury finding appellant guilty of negligence in causing the death of deceased finds no support in the evidence contained in the record before us. On the contrary, the proof leaves no doubt but that the death of deceased was the result of a purely accidental occurrence, without the fault of those causing it, for which no action will lie; for though there is damage, the thing amiss—the *injuria*—is wanting. Cooley on Torts, p. 80. It is suggested by some of the witnesses that the accident could have been avoided by a swinging scaffold or platform for the workmen to stand on while putting up the pipe. This was tried, and the workmen, including deceased, refused longer to work on it, and it was discarded. Again, the evidence of those best informed on the subject declares that scaffolding from the bottom is generally used and regarded as much safer. Other means have been suggested by which the accident could have been avoided, but they seem not to have been generally adopted or to have met the approval of those best informed upon the subject. But even if a less hazardous manner of scaffolding and letting down the boards could have been adopted, the deceased, in voluntarily entering the service and continuing therein with full knowledge of its dangerous character, assumed all the risks incident to the service in which he was engaged. I. B. & W. R. R. Co. v. Flanigan, 77 Ill. 365; W. St. L. & P. Ry. Co. v. Few, at the present term of this court; C. & E. R. R. Co. v. Geary, 109 Ill. —.

The relation of master and servant imposes no obligation on the master to take any more care of the servant than he may reasonably be expected to take of himself, and he can not justly complain of injuries received in the service if he continues therein with full knowledge of his danger. Wharton on Negligence, Secs. 214 and 217.

It is also contended that the deceased and Downey, and the person assisting him at the top of the shaft, bore such relation to each other in the service of appellant, that one could not recover of the common employer damages caused by the negligence of the other.

As we have already seen, the parties causing the death and the deceased were in the service of a common master, both actually co-operating at the time of the injury in the same thing, putting the pipe in the shaft, the deceased in the shaft and the others at the top, all in the presence and hearing of each other, their relations being such that they could have exercised an influence, one upon the other, promotive of proper caution in respect of their mutual safety, and they were fellow servants within the rule which exempts the master from liability for an injury inflicted upon one by the carelessness of the other. C. & N. W. Ry. Co. v, Moranda, 93 Ill, 302.

But it was claimed that Downey had the power to hire and discharge other employes of the company working at the shaft and to superintend them when at work, and therefore he was a representative of the master and not a fellow servant with deceased. It is not necessary to inquire how far, if at all, he represented the power of the common master. The mere fact that he may have had the power to employ and discharge other servants, if conceded, and to superintend them when at work, did not, as to the particular alleged act of negligence by which deceased was killed, change his character from that of a co-servant to that of a representative of the company. The death of deceased was not the result of the exercise of any authority conferred upon Downey. He exercised no power that placed deceased in a more exposed or dangerous position than he would otherwise have occupied, nor did any power

exercised by him contribute to the accident. The authority possessed by Downey, whatever it may have been, had no influence or bearing upon the accident which caused the injury, and at the time of the accident Downey and deceased were performing the labor of common servants, neither exercising any authority over the other, and they were co-servants as to the labor then being performed by them.

For the reasons here given the judgment is reversed and the cause remanded.

Reversed and remanded.